UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| ARLENE MONEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 1:02-CV-183/1:99-CR-73 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **M E M O R A N D U M**

Before the Court is the motion of *pro se* petitioner Arlene Money ("Petitioner") to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 (Court File No. 3). In compliance with the Court's Order (Court File No. 4), the United States ("Government") filed a response to Petitioner's motion (Court File No. 5). Petitioner additionally filed a reply (Court File No. 6) and a "Statement of Undisputed Issues of Material Fact" (Court File No. 7).

The Court previously denied one of Petitioner's asserted grounds for relief (Court File Nos. 10, 11). However, the Court granted an evidentiary hearing with respect to Petitioner's other ground for relief (*Id.*). In her motion, Petitioner claims her counsel, Charles Leland Davis ("Mr. Davis"), provided ineffective assistance of counsel because he failed to investigate and bring to the Court's attention the severe withdrawal symptoms suffered by Petitioner as a result of discontinued use of the prescription drug Paxil[1] (Court File No. 3, ¶¶ 6-10). After much delay, an evidentiary hearing was held on this claim on February 21, 2006 and continued on March 8, 2006 (Court File Nos. 44,

---

[1] Paxil is a prescription antidepressant medication that is used to treat depression, social anxiety disorder, premenstrual dysphoric disorder, and panic disorder. It is one of the selective serotonin reuptake inhibitors (SSRI) medications. www.paxilcr.com.

46). Petitioner, Mr. Davis, and Petitioner's mother, Maxine Gibson ("Ms. Gibson") testified at the hearing (*Id.*). In addition, Petitioner has submitted a report prepared by Dr. Greg Kyser (Court File No. 38).

After considering all of the evidence presented by the parties as well as the parties' filings and for the reasons stated below, the Court will **DENY** the remaining portion of Petitioner's motion.[2]

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is presently serving a 120-month prison sentence after pleading guilty of conspiring to distribute a Schedule II controlled substance, cocaine hydrochloride, in violation of 21 U.S.C. § 846. Petitioner's arrest and prosecution arose from an undercover investigation conducted by the Tennessee Bureau of Investigation ("TBI") in July and August 1999 (*see* Presentence Report, "PSR," ¶¶ 9-19). Through a confidential informant, TBI Special Agent Mike Finley ("Special Agent Finley") learned he could purchase large quantities of cocaine from Michael Todd Tollett ("Tollett"). After purchasing powder cocaine from Tollett on two separate occasions, Special Agent Finley set up a reverse sting in which he would attempt to sell cocaine to Tollett. Through a series of telephone conversations, Tollett agreed to purchase two kilograms of powder cocaine from Special Agent Finley. On August 23, 1999, Special Agent Finley and the confidential

---

[2]In accordance with Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in petitioner's § 2255 motion, which will be cited by the Court File Number assigned to the particular pleading or motion (*e.g.*, "Court File No. 1"), and all the files, records, transcripts, and correspondence relating to Petitioner's conviction in Criminal Docket No. 1:99-CR-73, which will be referred to by the Court File Number assigned to the particular matter in the underlying criminal case (*e.g.*, "Crim. Court File No. 1").

informant met with Tollett and Petitioner at the Homestead Inn in Athens, Tennessee. During the sale, Tollett and Petitioner discussed past trips they had taken to Miami to purchase cocaine. Petitioner inspected and tested one kilogram of cocaine. Upon approval, Petitioner removed $25,000 from her purse and gave it to Special Agent Finley, $20,000 for the then-present kilogram of cocaine and a $5,000 down payment on the other kilogram. As soon as the money changed hands, law enforcement officials entered the room and arrested both Tollett and Petitioner (Crim. Court File No. 34 ¶ 8).

Tollett and Petitioner were advised of their rights, but both chose to waive those rights and gave statements admitting their involvement in the distribution of cocaine (Crim. Court File No. 34 ¶ 8). Petitioner was charged with (1) combining, conspiring, confederating, and agreeing with Tollett to knowingly, intentionally, and without authority distribute cocaine hydrochloride in violation of 21 U.S.C. §§ 841 and 846, and (2) aiding and abetting Tollett in knowingly, intentionally, and without authority possessing cocaine hydrochloride with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Crim. Court File No. 13). Pursuant to the terms of a plea agreement with the Government, Petitioner pleaded guilty to the conspiracy count and the Government dismissed the aiding and abetting count of the Indictment (Crim. Court File No. 34).

Petitioner made several inconsistent statements at various times following her arrest and leading up to her sentencing. Immediately following her arrest, Petitioner specifically stated she had traveled to Key West, Florida, to purchase kilogram quantities of cocaine on at least three occasions beginning in March 1999 (Crim. Court File No. 34 ¶ 8). However, at her rearraignment Petitioner disputed portions of the factual basis for her guilty plea and contended she was aware of neither the

3

amount of money nor the quantity of drugs involved in the transaction (Crim. Court File No. 38, Dec. 10, 1999 Rearraignment Transcript, p 18). Petitioner also claimed, contrary to her previous statements, she had no knowledge of the quantity of drugs she had purchased on her trips to south Florida (PSR ¶ 6; Rearraignment Transcript, pp. 18-19; Crim. Court File No. 51, March 10, 2000 Sentencing Hearing Transcript ("Sentencing Transcript"), pp. 41, 58-59, 62, 64).

These inconsistencies became relevant at Petitioner's sentencing as to whether Petitioner had met the "truthful information" criterion of the safety-valve provision of the United States Sentencing Guidelines allowing the imposition of a sentence below the statutory minimum. *See* United States Sentencing Guidelines ("USSG") § 5C1.2(5) (1998). At the sentencing hearing, TBI Special Agent Joe Copeland ("Special Agent Copeland") testified Petitioner told him prior to sentencing she had taken three trips to Florida in 1999 and specified how much cocaine she and Tollett picked up on each trip (*Id.* at p. 25). Petitioner then testified she did in fact make trips to Florida to get cocaine and bring the cocaine back to Tennessee (*Id.* at pp. 42, 47, 62, 71). However, despite her previous statements about kilogram quantities of cocaine, Petitioner stated she was not sure how much cocaine she and Tollet picked up (*Id.* at pp. 47, 58). One of several explanations for her contrary statements was her "withdrawal from regular medication" (*Id.* at p. 58).

Petitioner was also inconsistent in her testimony at the sentencing hearing. Initially Petitioner claimed she was accompanied by her boyfriend, Tollett, only on one of the Florida trips (*Id.* at p. 64). Later, Petitioner admitted she went with Tollett to Florida three times (*Id.*). Petitioner again contradicted herself by first submitting she was not aware if any cocaine was purchased on a fourth trip to Florida (*Id.* at p. 53). Yet, she later admitted cocaine was in fact picked up on the fourth trip (*Id.* at p. 67). After hearing all of the testimony at the sentencing hearing, the Court

4

concluded Petitioner had failed to carry her burden under § 5C1.2(5) of showing she had truthfully provided all the information and evidence concerning the offense she had to the Government, and declined to apply the safety valve (Sentencing Transcript, pp. 101-02). In making its determination, the Court noted "there were [] inherent incorrections[3] (sic) in [Petitioner's] testimony itself" (*Id.* at 102).

Since the PSR had attributed "slightly more than six (6) kilograms of cocaine hydrochloride" to Petitioner (PSR ¶ 20) and Petitioner had not objected to that figure (Sentencing Transcript, p. 84), the Court sentenced Petitioner under 21 U.S.C. 841(b)(1)(A) and imposed the mandatory minimum prison term of 120 months with five years supervised release and the special assessment of $100 ((Sentencing Transcript, p. 105; Crim. Court File No. 40). Petitioner appealed this sentence to the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") (Crim. Court File No. 41). The Sixth Circuit affirmed Petitioner's sentence on June 15, 2001. *See United States v. Money*, 2001 WL 700796 (6th Cir. June 15, 2001) (unpublished opinion). Petitioner was represented at all stages, from her initial appearance through her appeal to the Sixth Circuit, by Mr. Davis.

## II. DISCUSSION

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside that sentence, on the grounds:

---

[3] This should read: "there were [] inherent *inconsistencies* (sic) in [Petitioner's] testimony itself."

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles,* 568 F.2d 1 (6th Cir. 1977); *Mayes v. United States,* 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000).

Where a constitutional error is alleged, in order to obtain relief under § 2255 the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1721-22, 123 L. Ed. 2d 353 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). "To prevail under 28 U.S.C. § 2255, a defendant must show a 'fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process.'" *Gail v. United States*, 21 F.3d 107, 109 (6th Cir. 1994) (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

Petitioner contends her defense attorney, Mr. Davis, provided ineffective assistance of counsel in violation of the United States Constitution at sentencing and on direct appeal by failing to present evidence of Petitioner's prescription drug withdrawal symptoms (Court File No. 1, p. 4).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

6

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S. Ct. at 2064. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690, 104 S. Ct. at 2066. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S. Ct. 2574, 2586, 91 L. Ed. 2d 305 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691, 104 S. Ct. at 2066. The *Strickland* test, however, must be adjusted in cases where a defendant has pled guilty instead of being found guilty after a trial. *Thomas v. Foltz,* 818 F.2d 476, 480 (6th Cir.), *cert. denied,* 484 U.S. 870 (1987). To

7

successfully challenge a guilty plea on the ground of ineffective assistance of counsel, Petitioner must show a reasonable probability that, but for counsel's errors, Petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52 (1985); *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996), *cert. denied*, 519 U.S. 1132 (1997); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994); *Sullivan v. United States*, 11 F.3d 573, 576 (6th Cir. 1993); *United States v. Smith*, 981 F.2d 887, 894 (6th Cir. 1992).

The *Strickland* Court further held both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

Petitioner argues she was denied effective assistance of counsel in connection with Mr. Davis' failure to investigate and bring to the Court's attention the "severe withdrawal symptoms" she suffered as a result of discontinued use of the prescription drug Paxil shortly before her arrest and interrogation (Court File No. 3, ¶¶ 6-10). She argues these withdrawal symptoms – which allegedly included insomnia, confusion, amnesia, impaired concentration, depression, and emotional instability – rendered Petitioner "unable to maintain a rational train of thought or any type of logical reasoning" (*Id.* ¶ 8). This, she contends, accounts for her inability to provide consistent and/or complete statements to law enforcement officials and the Court. Petitioner posits had Mr. Davis
8

presented this evidence at sentencing or on appeal, "the Court would have had a logical explanation for the inconsistencies in [Petitioner's] statements about her offense" and, therefore, would have concluded Petitioner had satisfied the requirements of the safety-valve provision and given Petitioner a reduced sentence (*Id.* ¶ 25).

At the recent evidentiary hearing, Petitioner's mother, Ms. Gibson, testified she told Mr. Davis about Petitioner's withdrawal symptoms several times before Petitioner was sentenced. Specifically, Ms. Gibson stated she informed Mr. Davis since Petitioner was not given the appropriate amount of Paxil by prison officials, it caused Petitioner to be confused. Petitioner also testified she told Mr. Davis about her withdrawal symptoms. However, Petitioner testified she could not recall if she asked Mr. Davis to raise the Paxil issue at the sentencing hearing. Mr. Davis testified he met with Petitioner on several occasions before she was sentenced and found she had no difficulty in recalling events or in telling him a consistent story in private. Significantly, Mr. Davis testified Petitioner only had trouble being consistent when she was explaining the offense conduct to the Government. Mr. Davis explained Petitioner would "pull back" when she had proffer sessions with the Government most likely because she was attempting to protect her co-defendant and boyfriend Tollett. Mr. Davis testified Petitioner never appeared to have any cogency issues or focusing problems.

After considering all of the evidence and the testimony the Court summarized above, the Court concludes Mr. Davis was not deficient. Although it appears Mr. Davis knew Petitioner had some withdrawal symptoms shortly after she was arrested, he had no reason to believe Petitioner was incapable of telling the truth as a result of her withdrawal from Paxil. Petitioner showed no signs of being confused in private and she consistently recalled the quantity of drugs and Tollett's

9

involvement unless she was in a proffer session with the Government or testifying before the Court. Also, there is no evidence Petitioner requested Mr. Davis to inform the Court of the Paxil issue despite the fact Petitioner was well informed if she did not tell the truth, the safety valve would not apply. Further, the Court credits Mr. Davis' testimony and finds Petitioner's failure to tell the truth was not related to her use or the cessation of her use of Paxil. The Court also had the benefit of observing Petitioner during her appearances in court. The Court did not detect any general confusion on Petitioner's part that raised concerns regarding Petitioner's mental faculties at the time.

However, even if the Court was willing to link Petitioner's withdrawal from Paxil to her failure to tell the truth, it could only do so for the time between the arrest and the time Petitioner was given the proper amount of Paxil. Petitioner admitted she received and was taking the proper amount of Paxil before the sentencing hearing. As a result, she should have had little trouble in being truthful at the sentencing hearing.[4] Yet, Petitioner contradicted herself on more than one occasion at the sentencing hearing. Further, Petitioner decided to tell yet another conflicting version of the offense conduct at the recently held evidentiary hearing. At the evidentiary hearing, Petitioner stated numerous times she had no idea cocaine was going to be purchased on the trips to Florida. This is in direct contradiction to her sentencing hearing testimony and prior statements to the Government and Mr. Davis in which she admitted more than once the purpose of the trips to Florida were to purchase cocaine. Thus, the Court concludes Petitioner is not wholly credible and she was not being truthful at the sentencing hearing. Hence, Mr. Davis was not deficient in failing to raise

---

[4] Petitioner has not submitted any competent evidence suggesting the mere use of the drug Paxil prevents her from telling the truth or causes her severe cognitive difficulties. Further, her claim rests on the "fact" she was experiencing *withdrawal* symptoms. Obviously, if she was taking the proper amounts of Paxil, she would not be in withdrawal.

the Paxil issue before this Court or before the Sixth Circuit on direct appeal.

Despite the Court's previous conclusion, even if the Court assumes Mr. Davis was deficient, Petitioner's ineffective assistance of counsel claim still fails because Petitioner has not met her burden in proving the prejudice prong of *Strickland*. Petitioner has never claimed if it were not for Mr. Davis' ineffective assistance of counsel she "would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Nonetheless, even if she made such a claim, the Court would not find the prejudice prong was satisfied. Petitioner does not claim she is innocent. Therefore, if she went to trial she would have been convicted and subjected to the same ten year statutory minimum. Further, if the Paxil issue had been researched by Mr. Davis and brought before the Court at sentencing it would have been rejected for the reasons already discussed and the Court would not have applied the safety valve. Thus, it is clear Petitioner was not prejudiced even if Mr. Davis was deficient. Accordingly, the Court will **DENY** Petitioner's request for relief.

## IV.    CONCLUSION

For the reasons stated above, the Court holds Petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

The Court must now consider issues that may arise if Petitioner files a notice of appeal. Section 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion.[5] Section 2255 now incorporates the old habeas procedure of issuing or denying a

---

[5] The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions. *Hereford v. United States*, 117 F.3d 949, 951 (6th Cir. 1997); *cf. McGore v. Wrigglesworth*, 114 F.3d 601, 610 (6th Cir. 1997) (instructing courts

11

certificate of probable cause, now renamed a certificate of appealability. No § 2255 petitioner may appeal without this certificate. District judges may issue certificates of appealability under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which codifies the standard for issuing a certificate of probable cause originally articulated in *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983). *See Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997). "A certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" *Barefoot*, 463 U.S. at 893, 103 S. Ct. at 3394. *See also* 28 U.S.C. § 2253(c)(2). The standard is perhaps best phrased as follows:

> In requiring a "question of some substance," or a "substantial showing of the denial of [a] federal right," obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are "adequate to deserve encouragement to proceed further."

*Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980) (quoting *United States ex rel. Jones v. Richmond*, 245 F.2d 234 (2d Cir.), *cert. denied*, 355 U.S. 846, 78 S. Ct. 71, 2 L. Ed. 2d 56 (1957)).

In this case, Petitioner's claims are clearly without merit, and she cannot present a question of some substance about which reasonable jurists could differ. The Court therefore **DENIES** a certificate of appealability.

Fed. R. App. P. 24(a) further requires the district court to certify in writing whether the appeal is taken in good faith. For the same reasons the Court denies a certificate of appealability,

---

regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the $105 filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure. *Hereford*, 117 F.3d at 952. If the motion is denied, the prisoner may renew the motion in the appellate court.

12

the Court determines that any appeal in this case would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Fed. R.App. P. 24(a), that any appeal in this matter by Petitioner is not taken in good faith, and she may not proceed on appeal *in forma pauperis*. *United States v. Atkins*, 171 F. Supp. 2d 769 (W.D. Tenn. 2001). No certificate of appealability will issue as Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c).

      An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**